## DRAKE *v.* EUBANKS.

Opinion delivered October 19, 1895.

SALE OF LAND—MISTAKE IN QUANTITY—ABATEMENT OF PRICE.—A purchaser of land who relies upon the vendor's representation that it contains 219 acres, when in fact it contains 40 acres less, is entitled merely to a proportionate abatement of the purchase price, if the only damage proved was his failure to receive the amount of land represented.

Appeal from Madison Circuit Court in Chancery.

EDWARD S. MCDANIEL, Judge.

*Dan W. Jones & McCain* for appellants.

There is no conflict in the testimony. Eubanks admits he told defendants there were 209 or 219 acres. The facts in this case are not unlike those in 25 Ark. 102.

BATTLE, J.    Peter Eubanks instituted this action against J. J. Drake and B. A. Drake to foreclose a lien for purchase money.    He alleged, in his complaint, that he sold his farm, containing 177½ acres, to the defendant's for $700, of which they paid, at the time of the purchase, $565, and agreed to give their promissory note for the remaining $135, and had failed to do so, or pay it; and asked that the land be sold to pay the same.

The defendants answered, and admitted the purchase for the sum stated, but alleged that plaintiff, in selling the farm, falsely and fraudulently represented, and induced them to believe, that it contained 219 acres, and conveyed it to them by deed as containing that number of acres, when in fact it contained only 177½ acres, and that the deficiency in quantity made a difference in value of $200, which they set up as a counter-claim, and asked for judgment against the plaintiff for it.

The trial court rendered a decree against the defendants for the $135, and $8.10 for interest thereon, and ordered that the land be sold to pay the same.

We find the facts, as shown by the evidence, substantially as follows:    Some time in January, 1893, Eubanks represented to the defendants that a farm owned by him, and composed in part of tracts which could only be described by metes and bounds, contained 219 acres, and offered to sell it to them for $700.    He showed them a part of the boundary lines of the land, but not all.    The part shown included the lines between his and the lands belonging to David Eady and James Mc-Christian.    They made no further investigation, but,

believing his representation, they received it as true, accepted his offer, and paid of the purchase money, $565, and agreed to execute their note to him for the other $135. He executed to them a deed purporting to convey certain lands, including the farm, giving the number of acres contained in each tract, but not the aggregate, and covenanting with them that he "will forever warrant and defend the title to said lands against all lawful claims whatever." And they took possession of the farm. Upon a demand for the promissory note, it was found that the lands which plaintiff undertook to convey by the deed contained in the aggregate 259 acres, and that two of the tracts belonged, respectively, to David Eady and James McChristian, and had been previously conveyed to them by Eubanks; that they were in their possession at the time of the purchase; and that these tracts contained 81½ acres, leaving 177½ acres actually conveyed by the deed. And the defendants refused to execute the note.

Plaintiff was illiterate, could not read, and of course was compelled to rely on another to prepare his deed. The result was, two tracts which he had sold to other persons, and did not belong to him, were included in the deed. This was obviously a mistake. He had shown to the defendants the boundary lines between these tracts and the land he sold to them. They knew that Eady and McChristian were in possession of the two tracts, and do not contend that they purchased any land other than that to which they acquired title; but they do insist that which was actually sold to them did not contain as many acres as was represented. Plaintiff represented to them, and they believed, that it contained 219 acres, and it contained only 177½ acres; a difference of forty-one and a half acres, which is material. Having relied upon the representation, they have a right to hold what was actually conveyed, and to an abatement of the

purchase money to the extent the quantity falls short of the representation ; and this abatement is shown by the basis upon which the farm was sold.   Both parties, in fixing the price, believed that it contained 219 acres. There is no competent evidence to show that it would have been worth more than the price agreed on, had it contained the quantity estimated.   Upon this state of facts, as it does not appear that they were damaged except in failing to get as much as 219 acres, the abatement ought to be in proportion to the price agreed to be given for the land as represented.   *Harrell* v. *Hill*, 19 Ark. 102.   According to this rule, the defendants are entitled to a reduction for forty-one and a half acres at the rate of $3.19$\frac{139}{219}$ an acre, which, not including a fraction of a cent, equals $132.42.   This, taken from $135, the amount of purchase money remaining unpaid, leaves $2.58 still due to plaintiff, with interest thereon, to secure the payment of which he is entitled to a vendor's lien.

The decree of the circuit court is, therefore, reversed, and the cause is remanded, with instructions to the court to enter a decree in accordance with this opinion.