G. L. TINSLEY et al *v.* CROSS DEVELOPMENT COMPANY et al

82-80                                              642 S.W.2d 286

Supreme Court of Arkansas
Opinion delivered November 8, 1982
[Rehearing denied December 20, 1982.]

*Worth Camp, Jr.* of *Law Office of Worth Camp,* and *Chuck L. Honey* of *Honey & Rodgers,* for appellants.

*Robert C. Compton* of *Brown, Compton & Prewett, Ltd.,* for appellees.

DARRELL HICKMAN, Justice. The only question of concern to us in this case is whether the trial court was wrong in denying a motion for a new trial. The law requires that if we find any substantial evidence to support the verdict of the jury, the trial court's decision will be affirmed. *Ferrell v. Whittington,* 271 Ark. 750, 610 S.W.2d 572 (1981). We find substantial evidence and affirm the trial court's decision.

This lawsuit arose over a fire that occurred in a 55,000 barrel crude oil storage tank owned by the appellee, Cross Development Company of Smackover, Arkansas. The tank was located approximately three miles from Smackover. It was struck by lightning and caught fire on Sunday evening, July 7, 1974. The tank was over fifty years old and its roof was wooden and sheathed with steel. The lightning cut the roof, igniting either the wooden timbers supporting the roof, or the vapor inside the tank. A nearby resident saw the lightning strike and called the Smackover Fire Department and Mr. Nimrod Price, the president of Cross Development Company. The Smackover Fire Department, which is entirely volunteer, arrived at the fire in about thirty minutes.

For assistance, someone called the El Dorado Fire Department, which is located about ten miles away, and Mr. J. L. Turner, who is the retired fire chief for American Oil Company which once had a plant in the area.

The fire got out of control, burning Sunday night and all day Monday. On Monday, the oil boiled over twice. The second time it erupted, a burning, lava-like substance flowed along the contour of the land. It is known by those familiar with such tanks that a boil over is inevitable when the fire gets out of control; the bottom of such tanks contains a foot or so of water that eventually turns to steam and pushes out the extremely hot oil. Some woods, a home, and several buildings were totally destroyed by fire.

The appellants were the owners of a feed mill and welding shop building that were destroyed. They sued Cross Development Company for $103,438 in compensatory and punitive damages, alleging that the company was negligent in failing to comply with the Arkansas Fire Code, failing to have adequate fire fighting equipment available, and failing to maintain an adequate dike or fire wall around the tank that would contain a boil over. The jury found for Cross Development Company on all issues.

The appellants' motion for a new trial simply stated that the verdict should be set aside because it is "contrary to the preponderance of the evidence and contrary to the law." After considering the motion, the court, in a lengthy order, found that the verdict would, indeed, be clearly against the preponderance of the evidence except that the jury could have concluded from the evidence presented that the Smackover Fire Department's actions were an independent intervening cause of the damages to the appellants and required safety measures would have been fruitless.

The trial judge, in his order, cited the evidence of the appellees' negligence: That the company failed to comply with the Arkansas Fire Prevention Code since the tank did not have a floating roof and the surrounding fire wall did not include a flareback section to turn back a boil over, as the code requires; that the company had none of the customary

fire fighting equipment; and, that no precautions were taken against lightning.

However, the trial judge also noted the evidence of an independent intervening cause of the damage. The trial judge referred to essentially undisputed testimony that the fire could have been put out in the first few hours if the Smackover Fire Department had applied foam and otherwise properly treated the blaze. There was testimony that the Smackover Fire Department refused to allow the El Dorado Fire Department to use its foam equipment and that Mr. J. L. Turner's advice and assistance were rejected shortly after the fire started. Turner had testified that he could have extinguished the fire with two portable foam fire extinguishers if he had had help. He was told he was interfering and he left. The El Dorado Fire Department's fire chief and one of its firemen said the fire could have and should have been quickly extinguished.

The trial court also noted that there was testimony that the lack of a flareback section on the dike would not have contained the boil over since one witness said that the oil poured out from the top of the tank and over the outer walls of the fire wall like an umbrella. This witness saw the second boil over.

On review, we do not decide the credibility of the witnesses; we only examine the record to see if there is substantial evidence to support the verdict. *Lindsey* v. *Watts,* 273 Ark. 478, 621 S.W.2d 679 (1981); *Miller* v. *Tipton,* 272 Ark. 1, 611 S.W.2d 764 (1981). The jury was instructed on independent intervening cause *without objection* by the appellants. Furthermore, the appellants did not state in the motion for a new trial, nor argue in their brief, the court was in error in giving the instruction. The jury was allowed to consider whether there was an independent intervening cause for the damages suffered by the appellants. The jury could have conceivably found that the actions of the Smackover Fire Department were an intervening proximate cause of the damage. This, coupled with the fact that there was testimony that a higher dike or fire wall would not have made any difference to the extent of damage, was sufficient

evidence to support the jury's verdict. Although there was testimony that the fire wall was not of the height required by the code, the jury could have found it to be adequate since a survey introduced by the appellants noted that the fire wall or dike would contain a 55,000 gallon spill.

We have serious doubts as to whether the court should have given the jury the instruction on independent intervening cause in this case. *See Larson v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980). But the appellants' failure to object to this instruction is fatal to its case on appeal. We have held that the failure to object to an instruction, even if it erroneously states the applicable law, is a waiver of any error committed by giving it. *Willis v. Elledge*, 242 Ark. 305, 413 S.W.2d 636 (1967); *Turkey Express, Inc. v. Skelton Motors, Inc.*, 246 Ark. 739, 439 S.W.2d 923 (1969). The appellant's action in permitting this issue to go to the jury without objection precludes consideration of that issue on appeal.

The trial court, in its order denying a new trial, observed that the appellants did not plead or prove the facts necessary to raise the issue of collateral estoppel and thus take advantage of a prior judgment against the Cross Development Company in another lawsuit involving the same fire.

The appellants argue that the court was wrong in not declaring crude petroleum to be an inherently dangerous product when stored so that the law of strict liability would apply. There was no evidence presented by which the court could conclude that crude petroleum when properly stored is an inherently dangerous product. The court refused to instruct the jury on punitive damages and granted appellees' motion for a directed verdict on that issue. Since no compensatory damages were awarded, and some are necessary to support a verdict for punitive damages, the court did not commit reversible error by granting the motion. *Winkle v. Grand National Bank*, 267 Ark. 123, 601 S.W.2d 559 (1980).

The appellants did object to the court's instruction that a person is not liable for damages caused solely by an act of

God. The instruction directs, however, that if the act of God concurs with another's negligence to cause damages, the negligent person is not excused from liability. The instruction followed AMI 615 and was proper under the facts of this case.

Affirmed.